### JOHN M. PARKER CO., Inc., v. MAY et al.

### No. 10249.

Circuit Court of Appeals, Fifth Circuit.

June 27, 1942.

John D. Miller, of New Orleans, La., and Alfred Stoner, of Greenwood, Miss., for appellant.

J. L. Roberson and W. W. Venable, both of Clarksdale, Miss., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

John M. Parker Company, a corporation of Louisiana, sued Joe E. May and Lee May (May Brothers), citizens of Mississippi, on three counts, claiming in the first that the defendants had breached their contract obligations respecting a lot of 2,632 bales of cotton and had converted the cotton to plaintiff's damage in a sum of $39,101; in the second count that the cotton had been by the defendants resold, they receiving $26,320, which justly belongs to plaintiff; and in the third count that plaintiff was entitled to recover at least $6,580 paid to defendants by plaintiff for rights in the cotton. The answer, besides denials, set up that plaintiff acquired no rights in the cotton, but only options to discharge sums for which the cotton stood pledged to the Commodity Credit Corporation and thus to take over the cotton within a certain time, which was not done, so that plaintiff's rights expired; and defendants in reselling the cotton afterwards merely dealt with what was their own. It was also set up that a sale of cotton pledged to the Commodity Credit Corporation, such as plaintiff claimed defendants had made, would be contrary to the public policy of the United States as fixed by the Agricultural Adjustment Act of 1938, 7 U.S.C.A. § 1281 et seq., and the orders and procedures established pursuant thereto, and would be illegal and void. Lastly, it was pleaded that a contract of sale of personal property by oral contract was in violation of Section 3347 of the Code of Mississippi. Jury was waived and the case was tried by the judge, who made findings of fact and conclusions of law, holding in effect that plaintiff acquired only a right to redeem the cotton by a fixed date, which was not done; that the extensions of the cotton loans by Commodity Credit Corporation to July 31, 1941, could only be on such terms as the Corporation fixed, and that plaintiff's offer to redeem the cotton made May 6, 1941, was ineffectual because not accompanied by Form R delivery orders, which were required by the corporation but which the defendants on request of plaintiff refused to execute; and that defendants were within their rights in such refusal. Judgment was given for defendants, and this appeal was taken.

The facts found or clearly proved are to this effect: Defendants are Mississippi cotton planters who produced these 2,632 bales of cotton in 1938, and not being able to sell them for a satisfactory price obtained 71 loans on separate lots from a bank on forms used by the Commodity Credit Corporation, and the bank later transferred the loans and the cotton warehouse receipts pledged to secure them to this Corporation. All the loans were due July 31, 1939; and provided for acceleration of maturity in certain events, which did not occur. After maturity, in due course or by acceleration, sweeping powers over the cotton could be assumed by the holder, including sale without notice, after which the proceeds were to be applied to expenses and the loan, and "the overplus, if any, paid only to the undersigned or his personal representatives, without right of assignment or substitution of any other party. The undersigned producer shall be and remain liable to the holder for any deficiency only in the event that the loan was obtained through fraudulent representations by the producer." The absence of personal liability for deficiency is pursuant to statute. Agricultural Adjustment Act of 1938, Sect. 302 (c) (h), 7 U.S. C.A. § 1302 (c) (h). The Corporation, prior to maturity of these loans, extended them to July 31, 1940. On January 2, 1940, Ben K. Pearce, a Mississippi cotton broker,

through another broker in New Orleans, arranged a transaction between plaintiff and defendants by which the defendants signed an order respecting each of the 71 loans, one reading thus: "Lombardy, Miss., Jany. 2, 1940. To Commodity Credit Corp. or other holder of note or notes: Gentlemen: This is your authority to release to Jno. M. Parker Co., New Orleans, La., 50 bales of cotton securing our note dated 10/21/38, for $2,368.62, made payable to Planters Bank & Trust Co., Ruleville, Miss., upon payment of same by them with accrued charges to date of such release. (Signed) May Brothers, by J. A. May, Ben K. Pearce, witness; (Signed) Bought by Jno. M. Parker Co., Buyer." On the same day May Brothers in writing requested the warehousemen to resample the cotton for Parker Company at its expense. On delivery of these papers Parker Company gave Pearce a check for $6,580, and after deducting his commission Pearce paid over to May Brothers $5,264, being $2 per bale which they were to receive, and gave them, on an accounts sale form, a document the material part of which is: "Sales No. M #1212. Greenwood, Miss., Jan. 2, 1940. Sold for account of May Brothers * * * Equities in 2632 bales of cotton in the 1938/39 Commodity Credit Corporation loans (Cotton Producers Notes CCC Form A). All notes executed by May Brothers, Lombardy, Miss., and all notes payable to Planters Bank & Trust Co., Ruleville, Miss. Equity in 2632 b/c at $2 per bale, $5,264." There follows a list of the loan notes. This document was enclosed in a letter dated January 3, 1940, signed by Pearce, together with checks for the $5,264, which stated: "We enclose herewith A/S covering the sale of 2632 B/C in the 1938/39 Government cotton loan at $2 per bale, net proceeds, $5,264." These were all received, the checks were cashed, and Judge May, who acted for May Brothers, testifies he did not know that Parker Company had not taken the cotton out till advised in 1941 by Commodity Credit Corporation that May Brothers still held the cotton. Cotton was then advancing in price. The Corporation had again extended all loans to July 31, 1941, but had at the same time given public notice that it would not deliver cotton to others than producers except on orders from the producer on a newly framed Form R which had to show a sale by the producer immediately before its date. Some producers willingly executed these new forms to those to whom they had previously given orders, as on a "retrade". Others were paid something additional for executing the new forms. Pearce sought, just prior to May 6, 1941, to get Judge May to execute new forms for this cotton finally offering to pay over the $1,300 commission or price difference he had received in January, 1940, but Judge May said he thought he was not under legal or moral obligation, as he considered that Parker Company held only expired options. Parker Company, presenting its old orders and offering to redeem the cotton, and showing that May Brothers refused to give orders on the new forms, demanded the cotton warehouse receipts from Commodity Credit Corporation. It refused to recognize Parker Company, saying: "The special circumstances pointed out in your letter would appear to relate more to such rights as you may have against May Brothers than to the validity of the policy adopted by the Corporation." May Brothers thereafter sold their interest in the cotton to others for $26,300, giving them the new order forms, and they got the cotton.

The case turns upon the validity and effect of the contract of Jany. 2 and 3, 1940. Pearce testifies that he represented May brothers in making it, and Judge May testifies otherwise. We accept as not plainly erroneous the district judge's conclusion that Pearce was not the agent of May Brothers, and that they are not bound by what Pearce represented or warranted to Parker Company. Treating Pearce as a mere intermediary broker, the agreement between May Brothers and Parker Company, who had no direct communications, must be gotten from the papers that were exchanged through Pearce. The question is whether they show an option to redeem the cotton in a limited time, or a sale of May Brothers' interest in it, for the money paid. We do not find a word about option, or any reference to a limit of time, which is always of the essence of a contract of option. The letter sent May with the checks speaks of "the sale of 2632 B/C in the 1938/39 Government cotton loan", and the "net proceeds, $5,264." The accompanying document says: "Sold for account of May Brothers * * * equities in 2632 bales of cotton", and repeats: "Equity in 2632 b/c at $2 per bale $5,264." Each of the 71 orders for delivery of cotton to Parker Company which was signed by May Brothers concludes with the words, "Bought by John M. Parker Co., Buyer." We do not

think it possible that an option to buy, rather than a sale of May Brothers interest in the cotton was intended. The district judge so found in his informal statement from the bench, though it is not so written in the formal findings. May Brothers sold their "equity" or redemptive rights in the cotton to John M. Parker Company.

The sale was not invalid because of Mississippi Code, 3347, touching contracts of sale of goods for the price of $50 or upward. The writings signed by the parties sufficiently show the contract, and the purchase price was fully paid by Parker Company. Either would satisfy the statute.

The sale was not illegal because of any public policy of the United States. Neither Section 301 nor 302 of the Agricultural Adjustment Act of 1938, 7 U.S.C.A. §§ 1301, 1302, forbids any producer from selling his produce after obtaining a loan on it. Section 382, 7 U.S.C.A. § 1382, in providing for an extension of loans on 1937/38 cotton expressly recognizes the right of the borrower to sell his cotton. The loans were intended to help producers carry their cotton and to stabilize the market by stopping distress sales, but did not erect any guardianship over borrowers. The right to sell equities in pledged cotton to others was fully recognized by the Commodity Credit Corporation until it devised Form R. It may be that the Corporation, for the simplification and protection against abuse of its operations, could enforce the use of this form so far as dealings with it are concerned, but it could not annul vested rights as between May Brothers and Parker Company. Its letter of refusal to deliver the cotton to Parker Company recognizes this distinction. The provision in the original contract that in case of the sale of pledged cotton after loan maturity the Corporation will settle only with the borrower is in similar vein. It does not prevent the borrower from making his own commitments, and being liable for them. Moreover, this cotton was never sold after loan maturity by the Corporation. We find nothing in the federal law to save May Brothers from liability on their contract.

The question of the measure of damages has not been considered in the court below nor argued here. Whether the contract was made under Louisiana or Mississippi law has not been fully argued, and we do not decide it, though we have assumed that Mississippi law applies to it. The judgment is reversed and the cause remanded for further proceedings not inconsistent herewith.